## TEXAS INDEMNITY INS. CO. v. POOL.
### No. 5832.

Court of Civil Appeals of Texas. Amarillo.
Dec. 15, 1947.

Rehearing Denied Feb. 2, 1948.

Crenshaw, Dupree, Milam & Crenshaw, of Lubbock, for appellant.

Smith, Cunningham & Boling, of Lubbock, for appellee.

LUMPKIN, Justice.

This is a workman's compensation case. To set aside an award of the Industrial Accident Board of the State of Texas, the appellee, William A. Pool, the employee, instituted this case against the appellant, Texas Indemnity Insurance Company, the insurance carrier. Montgomery Ward & Company, Inc., was the employer.

The accident complained of occurred on October 19, 1946. On that date, while employed by Montgomery Ward & Company, Inc., at Lubbock, Texas, the appellee was engaged in loading and handling irrigation pipe. A ten-inch joint of the pipe, weighing approximately 2000 pounds, fell and struck the appellee's left foot. From this accident the appellee alleged he suffered a fracture of the great toe as well as other injuries to his left foot. He alleged that as a result of these injuries he suffered a total and permanent loss of the use of his left foot, thereby suffering total specific permanent disability to his left foot and great toe. As opposed to appellee's allegations, the appellant denied that the appellee was entitled to recover for disability occasioned by the injury. In the alternative the appellant pleaded that if the appellee had suffered an injury, he had long since recovered from any disability suffered therefrom. The ap-

pellant denied that the appellee suffered partial disability and alleged that if he suffered any injury, such injury was confined to his left great toe.

The case was submitted to a jury which found that the appellee had received an accidental injury resulting in total incapacity of his left foot and great toe for a period dating from October 19, 1946, the date of the accident, to December 13, 1946, and in permanent partial incapacity of 50 percent to his foot and 8 percent to his great toe. Since the parties had stipulated that the controlling wage was the sum of $26.33, the trial court, in accordance with the verdict, rendered judgment whereby the appellee should recover $15.80 per week from October 19, 1946, to December 13, 1946, and $7.90 per week for 117 weeks beginning December 13, 1946. The judgment states that both these sums are to bear 6 percent interest from the day each weekly payment accrues until paid. From this judgment the appellant duly excepted and gave notice of appeal.

The appellant attacks the court's judgment in four points of error contending, first, that the court erred in overruling appellant's first amended motion for a new trial. In this motion the appellant complains of the closing argument made by appellee's counsel: "They talk to you about me being bound by Dr. Edwards' testimony. Gentlemen of the jury, I am glad to be bound by his testimony. I will vouch for every word he testified to. They can't do that about their doctors, though. One of them is wrong as sure as the world, and they have got to admit that one of them is wrong."

Later, appellee's counsel stated: "I had Dr. Edwards to testify in this case, and I am willing to vouch for his integrity and his ability. I know him—I know him to be a man whom you can depend on and whose ability is not questioned here by these lawyers."

After the trial court had overruled the appellant's motion for a new trial, the appellant presented Bill of Exception No. 1, wherein the appellant excepted to the action of the trial court in permitting appellee's counsel to make these two statements in his closing argument. In qualifying the bill the court pointed out that the argument was not objected to when made; that the appellant's counsel did not request the court to instruct the jury not to consider such argument; and that no motion was made for a mistrial.

The bill points out that these two portions of the closing argument were highly prejudicial and were calculated and likely to prejudice and inflame the minds of the jury and amounted, in effect, to testimony by appellee's counsel regarding the character, ability, and integrity of appellee's witness, Dr. Edwards. The record reveals that in the course of his cross-examination Dr. Edwards stated that he had known appellee's counsel for some years, and that he had examined the appellee at the request of appellee's counsel and that he had examined the appellee for the purpose of making a report to the Industrial Accident Board and for the purpose of testifying at the trial. Twice in the course of the argument made by appellant's counsel the statement was made that the appellee vouched for his witness, Dr. Edwards.

It is a common rule of law that a party to a suit is bound by the testimony of his witness; and in placing him upon the stand, the party vouches for the credibility of the witness. This rule, however, does not authorize counsel to appear before a jury and voluntarily recommend the integrity and ability of his witness, although such a situation is not presented in this case. Obviously, counsel's argument was in reply to the argument made by the opposing counsel. Even if such argument was improper, however, it was of such a nature that, if objected to at the time, the statements could have been withdrawn by appellee's counsel, or the trial court could have cured the error by instructing the jury to disregard the particular remarks complained of by the appellant in his motion for a new trial. By his failure to object to such arguments and his failure to request the court to instruct the jury not to consider them, the appellant has waived the error. Robbins et al. v. Wynne, Tex.Com.App., 44 S.W.2d 946; Ramirez v. Acker et al., 134 Tex. 647, 138 S.W.2d 1054.

In his second point of error the appellant contends that the court gave an improper instruction to the jury in connection with

Special Issue 9(a). Special Issue 9 concerned the question of "partial incapacity." In dealing with this subject the court submitted the Special Issue in two parts, (a) and (b). Part (a) inquired whether the incapacity, if any, of appellee's left foot was or would become partial. The court then instructed the jury as follows: "You will answer the foregoing 'yes' unless from a preponderance of the evidence you find to the contrary." The jury answered, "Yes." The appellant asserts that this instruction, when given in connection with Special Issue 9(a), shifted the burden of proof from the appellee to the appellant and thus imposed upon the appellant a greater burden of proof than required by law.

We cannot agree with appellant in his contention. After giving the instruction as above quoted, the court continued by saying, "You are instructed that a person cannot have 'total incapacity of the foot' and 'partial incapacity of the foot' at one and the same time." Special Issue 9(b), which followed, read: "On what date do you find from the preponderance of the evidence that such partial incapacity, if any, began?" The jury wrote, "December 13, 1946."

■ It is apparent that the trial court submitted the question of partial incapacity to the jury in this manner to escape confusion. In response to Special Issues 4 and 5 the jury had found by a preponderance of the evidence that the appellee sustained total incapacity to his left foot by reason of the injury sustained by him on October 19, 1946; and by its answer to Special Issue 6 the jury found that such total incapacity was not permanent; and by its answer to Special Issue 7 the jury found that such total incapacity was temporary. In response to Special Issue 8, the jury found by a preponderance of the evidence that the total incapacity to appellee's left foot ended on December 13, 1946. The appellee therefore continued to sustain a total incapacity to his left foot by a preponderance of the evidence until such a time as his incapacity ceased to be total and became not total but partial by a preponderance of the evidence. The appellee had pleaded total and permanent disability. If supported by the evi-

dence, the appellee was entitled to recover for any partial incapacity to his left foot. In order to recover for total incapacity, however, the appellee had to prove by a preponderance of the evidence that his disability was not merely partial. By its instruction to Special Issue 9(a) the court clarified these questions for the jury; to have instructed it otherwise could have been confusing. Wright v. Traders & General Ins. Co., 132 Tex. 172, 123 S.W.2d 314; Southern Underwriters v. Grimes, Tex.Civ. App., 146 S.W.2d 1058, dismissed judgment correct; Southern Underwriters et al. v. Boswell, 138 Tex. 255, 158 S.W.2d 280; Commercial Standard Ins. Co. v. Brock, Tex.Civ.App., 167 S.W.2d 281, refused w. m.; Texas Employers' Ins. Ass'n v. Drayton, Tex.Civ.App., 173 S.W.2d 782, refused w. m.; Texas Employers' Ins. Ass'n v. Mallard, Tex.Civ.App., 192 S.W.2d 302, writ refused n. r. e.

■ By his next point of error, the appellant asserts that the jury's finding that the appellee on October 19, 1946, sustained an accidental injury to his foot is not supported by the evidence. The form of the special issue was not objected to by the appellant, who argues that the testimony of the medical witnesses shows only a fracture of the great toe and no injury to the left foot. A careful review of the record convinces us that such a finding by the jury is supported by appellee's testimony as well as by the testimony of Dr. Edwards and, to some extent, by that of Dr. English, the appellant's witness.

■ Finally, the appellant contends that the jury's answer to Special Issue 4 is not supported by the evidence. In response to this issue the jury found that by reason of the injury of October 19, 1946, the appellee sustained total incapacity of his left foot. The record reveals that following the accident the appellee was on crutches for more than a month and was totally disabled. In our opinion, the finding by the jury is amply supported by the evidence, and therefore appellant's point of error in this connection is overruled.

We have carefully reviewed the record in this case; finding no error, we affirm the judgment of the trial court.