Alice B. ANDERSON, Appellant,

v.

Clifton R. ANDERSON, Administrator of
the Estate of Josie W. Anderson,
Deceased, Appellee.

No. 5539.

Court of Civil Appeals of Texas,
Waco.

April 15, 1976.

R. Harold English, Terry L. Leedy, Arlington, for appellant.

Elliott & Bass, Canton, for appellee.

## OPINION

JAMES, Justice.

This is a contested probate matter, and is a suit contesting the listing of a savings account in the Inventory and Appraisement of the Estate of Josie W. Anderson, deceased, by the Administrator. The trial court's judgment was in favor of the Administrator, Appellee herein. We reform the trial court's judgment as hereinafter shown, and as reformed, we affirm same.

Josie W. Anderson, the deceased, died intestate on July 23, 1973. One of her sons, Clifton R. Anderson, was appointed and qualified as Administrator of his mother's estate. On November 16, 1973, the Administrator filed an Inventory, Appraisement, and List of Claims of the estate, which was approved by order of the County Court on the same date as filed. Shown as an item

under "Personal Property" therein was a savings account in the Bank of Mabank, Texas, in the amount of $10,000.00, recited to be the community property of the "decedent and spouse." This savings account is the subject matter of controversy herein.

On September 9, 1974, several months after the approval of the Inventory and Appraisement, Alice B. Anderson, Appellant herein, filed a "Complaint for Correction of Inventory" wherein she alleged that she (Alice B. Anderson) was the owner of the $10,000.00 savings account hereinabove referred to, and asserted that said savings account was "erroneously listed as personal property of decedent's estate," and in effect prayed that the savings account be stricken from the Inventory.

Trial was had before the court without a jury, after which the trial court entered judgment denying the relief sought by Complainant-Appellant, Alice B. Anderson, and adjudged that the savings account was the community property of the deceased, Josie W. Anderson, and her deceased husband, Jim Anderson. That is to say, the judgment held that the savings account was owned one-half by the estate of Josie W. Anderson, deceased, and the remaining one-half by the estate of her deceased husband, Jim Anderson; and that Complainant did not have any ownership interest in the account. Moreover, the trial court's judgment provided that both halves of said savings account were "subject to distribution by the Administrator through orders of this court upon proper proof of heirship of Jim Anderson and Josie W. Anderson."

From this judgment, Appellant Alice B. Anderson appeals on three points of error as follows:

(1) The trial court's finding of fact that Appellant Alice B. Anderson owned no interest in the savings account is so against the great weight and preponderance of the evidence as to be manifestly unjust, under the test laid down in *In Re King's Estate* (Tex.1951) 150 Tex. 662, 244 S.W.2d 660;

(2) The trial court erred in failing to find as a matter of law that Appellant Alice B. Anderson was owner of the savings account as a result of the survivorship contract entered into by Josie W. Anderson, Alice B. Anderson, and the Bank of Mabank; and

(3) The trial court erred in holding that the Administrator could distribute the funds in the joint savings account to the heirs of the James W. (Jim) Anderson estate because neither the court·nor the Administrator had any jurisdiction over the Estate of James W. Anderson.

■ Before discussing the questions concerning title to and ownership of the savings account in controversy, we hasten to point out that our Supreme Court has since early times held that the probate court has no jurisdiction to determine title to real or personal property, nor does the appellate court have jurisdiction to do so on appeal from the probate court. *Wise v. O'Malley* (1884) 60 Tex. 588; *Heirs of Edwards v. Mounts* (1884) 61 Tex. 398; *Brown v. Fleming* (Tex.Comm.App.1919) 212 S.W. 483, opinion adopted by the Supreme Court. These rules have been followed by our Courts of Civil Appeals in the following cases: *Slavin v. Greever* (Amarillo, Tex.Civ. App. CA 1919) 209 S.W. 479, no writ history; *Berry v. Barnes* (El Paso, Tex.Civ.App. CA 1930) 26 S.W.2d 657, no writ history; *Farrar v. Blair* (Dallas, Tex.Civ.App. CA 1953) 303 S.W.2d 873, NRE; *Bryan v. Bryan* (Amarillo, Tex.Civ.App. CA 1972) 477 S.W.2d 705, no writ history. Moreover, it has been held that the county court could not change the ownership of property by simply approving an Inventory and Appraisement, *Smith v. Buss* (1940) 135 Tex. 566, 144 S.W.2d 529, and that the Inventory and Appraisement is not conclusive, but is only prima facie evidence of title. *Little v. Birdwell* (Tex.1858) 21 Tex. 597 at page 607; *Brown v. Fleming* (Tex.Comm.App. 1919) 212 S.W. 483, opinion adopted; *Krueger v. Williams* (Tex.1962) 359 S.W.2d 48.

■ However, the order of the probate court approving or modifying the Inventory and Appraisement has been held to be appealable, *Krueger v. Williams* (Tex.1962) 359 S.W.2d 48; therefore under this deci-

sion we are required to determine whether the probate court correctly modified the Inventory and Appraisement. Also see *Brown v. Lee* (Waco, Tex.Civ.App., CA 1962) 362 S.W.2d 381, reversed on other grounds, Tex., 371 S.W.2d 694.

With this background in mind, we revert to Appellant's second point of error, to wit, wherein she asserts the trial court erred in failing to find as a matter of law that Appellant Alice B. Anderson was owner of the savings account as result of the survivorship contract entered into by Josie W. Anderson, Alice B. Anderson, and the Bank of Mabank. We are of the opinion that Appellant Alice B. Anderson was as a matter of law the owner of the one-half of the savings account that had previously been the community one-half owned by Josie W. Anderson, by virtue of the survivorship contract above-mentioned, and more particularly hereinafter described.

In order to evaluate Appellant's first and second points of error, a review of the facts is necessary. Josie W. Anderson and James W. (Jim) Anderson were husband and wife for many years, and both were elderly people when Jim Anderson died intestate in April 1970. No administration was had upon his estate.

Three children, all sons, were born to their marriage, to wit, James L. Anderson, Clifton Anderson (Administrator herein) and Clyde Anderson, all of whom were grown at the times pertinent to this controversy. James L. Anderson was married to Appellant Alice B. Anderson in 1942, which marriage was terminated when James L. Anderson died testate on December 18, 1970. Appellant Alice B. Anderson testified that her husband James L. Anderson died leaving a will which was probated in Tarrant County, Texas, in which she (Alice B. Anderson) was the sole beneficiary.

Josie W. Anderson died intestate on July 23, 1973, and on November 16, 1973, her son Clifton Anderson was appointed Administrator of his mother's estate by the County Court of Van Zandt County, Texas. On November 17, 1973, the Administrator filed with the probate court the Inventory and Appraisement and List of Claims for the estate showing a savings account in the Bank of Mabank in the amount of $10,-000.00 as community property of his deceased mother and father. The probate court signed an order approving the Inventory the same day as it was filed by the Administrator.

On September 9, 1974, Appellant Alice B. Anderson filed with the Court a pleading denominated, "Complaint for Correction of Inventory," wherein she alleged that the savings account was erroneously listed in the inventory because the $10,000.00 savings account belonged to her, the Appellant, by virtue of a survivorship contract between herself, Josie W. Anderson, and the Bank of Mabank (in which bank the money was deposited). At the date of Josie W. Anderson's death, the savings account in the Bank of Mabank was in the name of "Alice Beryl Anderson or Josie W. Anderson." The account was shown to be opened on January 20, 1971. The signature card is headed, "Bank of Mabank, Mabank, Texas," and contains the following language above the signatures of Josie W. Anderson and Alice B. Anderson:

"It is hereby agreed by the undersigned that the funds now in this account, or which may hereafter come into this account from any source whatsoever, are, and shall be, the property of the undersigned jointly and severally and are to be paid by the Bank to us, or to either of us in the absence of the other. In the event of the death of either of us, the funds shall become the property completely of, and belong to, and be payable to the survivor. In the event of the death of the survivor, the funds shall be payable to the executor, administrator, assigns, heirs or legal successors of such deceased survivor, and at all times the funds in this account, or any part thereof, may be paid by the bank to the person or persons so entitled to withdraw them, regardless of the original ownership of the monies so deposited. In the event of withdrawal by a survivor, after the death of one joint depositor, such withdrawal shall be subject to the provisions of Article 342 and 7144a, as

amended, Vernon's Texas Revised Civil Statutes."

Let us now look at the source of the ownership of the money in controversy. Donald Gibbs, President of the Bank of Mabank since 1955 and connected with the Bank since 1950, was called as a witness by the Appellant, Alice B. Anderson. This being so, the Appellant is bound by the testimony of this witness. See *Pickett v. Dallas Trust and Savings Bank* (Tex.Comm.App. 1930) 24 S.W.2d 354, opinion approved by the Supreme Court; *Texas Indemnity Insurance Co. v. Pool* (Amarillo, Tex.Civ.App. CA 1947) 207 S.W.2d 1004, NRE. Gibbs testified that the source of the account in dispute prior to January 3, 1959, was a joint checking account in the names of "Josie W. Anderson or Jim Anderson." On said last named date Josie W. Anderson wrote a check transferring $5600.00 out of the joint checking account of herself and her husband and deposited same in a savings account in the name of her son "James L. Anderson," and made it subject to being checked on by herself. Her husband Jim Anderson was not with her when this account was set up, according to Gibbs. Mr. Gibbs did not know the reason why Josie W. Anderson set up this account in her son's name, except that he did observe that after January 1959 that both Josie W. Anderson and Jim Anderson started cashing old-age assistance checks at the bank. The interest was permitted to accumulate on this savings account, and no deposits were ever made by James L. Anderson nor were any withdrawals made by him. The savings account carried James L. Anderson's social security number, and he and Alice paid income tax on the interest of this account from 1964 through 1970 inclusive, and after James L. Anderson's death (December 18, 1970) Alice paid income tax on the interest of this account for the year 1971.

As stated before, Jim Anderson died intestate in April 1970, and no administration was had on his estate. Then on December 18, 1970, the son James L. Anderson died. It was about a month after James L. died

that his mother Josie W. Anderson on January 20, 1971, transferred the money out of the "James L. Anderson Savings Account" into the savings account in controversy. By this time the savings account had grown with accretions of interest until it amounted to $8786.53. Josie W. Anderson wrote a check for this last-named amount out of the "James L. Anderson Savings Account" and set up a savings account in the name of "Alice Beryl Anderson or Josie W. Anderson," and both Alice and Josie signed the signature card with the bank containing the survivorship language hereinabove quoted. After this account was set up, the interest was allowed to accumulate, but neither Alice nor Josie ever made any deposits or withdrawals from the account at any time. Josie W. Anderson died intestate on July 23, 1973, and thereafter Appellant Alice B. Anderson never exercised any control over the account by making deposits or withdrawals. Alice made no claim to the funds until Josie W. Anderson had been dead fourteen months and the Administration had been in existence for nine months.

The trial court filed findings of fact and conclusions of law, in which he found that the savings account set up in the bank with "James L. Anderson and Josie W. Anderson as co-signatures was composed of funds belonging to the previous checking account of Josie W. Anderson and James W. (Jim) Anderson;" that the savings account was the community property of Josie W. Anderson and husband, Jim Anderson; that in April 1970 when Jim Anderson died intestate his community one-half of the savings account passed to his lawful heirs; and on July 23, 1973, when Josie W. Anderson died intestate, her interest in one-half of the savings account passed to her lawful heirs; that Alice B. Anderson was not a joint owner of the savings account and "therefore no survivorship agreement shall be inferred from the evidence."

We believe the evidence is ample if not undisputed that the source of the funds in controversy was the community property of Josie W. and Jim Anderson; moreover, that when Josie W. Anderson set up the

savings account in her son's name in 1959 with her reserving the right to check on the account, that the community nature of the property continued. Under this record the trial court had the right to infer that Josie W. Anderson transferred this money into her son's name in order for herself and husband to qualify for old-age assistance. In this event, the son would be holding the community funds of his parents in trust for them, and this is corroborated by the fact that from January 1959 until James L. Anderson's death in December 1970 (nearly twelve years), he never at any time exercised any control over this account by making any deposits thereto or withdrawals therefrom.

Since the property continued to be the community property of Josie W. and Jim Anderson after the 1959 savings account was set up, when Jim Anderson died intestate in April 1971, his community half of the savings account immediately vested in his heirs at law.

Now, in 1971, when Josie W. Anderson as a widow set up the survivorship agreement with the bank between herself and her widowed daughter-in-law Alice B. Anderson, this survivorship agreement was effective to bind Josie's own community one-half of the savings account; however, she had no right whatsoever to bind her deceased husband's community one-half, because it had already previously vested in her husband's heirs at law by the law of descent and distribution. In other words, the title that Appellant Alice B. Anderson took under the survivorship contract had its source in the title that was vested in Josie W. Anderson when she deposited the funds, to wit, one-half of the account. See *Turner v. Merchants and Planters National Bank of Sherman* (Texarkana, Tex.Civ.App. CA 1965) 392 S.W.2d 889, no writ history. That is to say, Alice is not entitled to anymore of the savings account (by virtue of the survivorship contract) than Josie had, since Alice's right of recovery depends on what interest Josie had.

Therefore, we sustain in part Appellant's second point and hold as a matter of law that Appellant Alice B. Anderson is entitled to one-half of the savings account in question by virtue of the survivorship contract signed by her and Josie W. Anderson, to which contract the bank was a party. *Davis v. East Texas Savings and Loan Association* (1962) 163 Tex. 361, 354 S.W.2d 926; *Krueger v. Williams* (1962) 163 Tex. 545, 359 S.W.2d 48; *Quilter v. Wendland* (Tex. 1966) 403 S.W.2d 335; *Brown v. Lane* (Dallas, Tex.Civ.App. CA 1964) 383 S.W.2d 649, writ refused; *Johnson v. Johnson* (Amarillo, Tex.Civ.App. CA 1957) 306 S.W.2d 780, writ refused.

■ Appellant's third point asserts error of the trial court in holding that the Administrator of Josie W. Anderson's estate could distribute the funds in the savings account that belonged to the heirs of the Jim Anderson estate. We sustain this contention. Neither the trial court nor the Administrator had any jurisdiction whatever over Jim Anderson's estate. As stated, Jim Anderson died intestate in April 1970, and no administration was had on his estate.

In the light of our disposition of Appellant's second and third points of error, we deem a disposition of Appellant's first point (factual sufficiency point) to be immaterial.

In view of our holding that one-half of the savings account belongs to Appellant Alice B. Anderson and the remaining one-half to the heirs of Jim Anderson, deceased, we hereby reform the trial court's judgment by deleting any language therefrom to the effect that the estate of Josie W. Anderson, deceased, owns any interest in the savings account. Said judgment is further reformed by deleting any language therefrom wherein the trial court undertook to exercise any jurisdiction or control over the one-half of the savings account owned by the heirs of Jim Anderson, deceased. As reformed, the trial court's judgment is affirmed. It is accordingly ordered that the savings account in controversy be entirely stricken from the Inventory and Appraisement. Costs in the trial court and on appeal are taxed one-half each to Appellant and Appellee.

REFORMED AND AFFIRMED.